Herman F. Schmitt, Administrator, v. Louis Jacques.

Decided April 17, 1901.

**1.—Action Against Administrator—Conversion—Personal Liability.**

Where an administrator, acting in his representative capacity, and in good faith, took possession of the property of another and sold it for the benefit of the estate, the suit for its conversion was properly prosecuted against him as administrator. It seems that plaintiff would have the option to proceed against him either personally or in his representative capacity.

**2.—Same—Presentation of Claim to Administrator.**

Where plaintiff sues as the owner of a fund arising from a conversion and sale of his property by an administrator, he does not claim through, but adverse to, the estate, and a presentation of his claim to the administrator and a rejection thereof is not necessary as a condition precedent to his right to sue.

**3.—Sale by Administrator—Interest of Estate.**

Where the administrator sold the whole of certain property as that of the estate, and received the full value thereof, although the estate owned only a one-half interest therein, there is no merit in the contention that the sale carried only the interest of the estate, and therefore the estate could not be held liable for conversion.

**4.—Pleading—Fraud—Verification.**

Where plaintiff, a creditor of H., suing for the conversion of certain property which defendant claimed by virtue of a bill of sale executed by H., alleged by supplemental plea that "as plaintiff is informed and believes and here charges the facts so to be," the bill of sale was without consideration and executed for the fraudulent purpose of defeating plaintiff's debt, with affidavit to the plea swearing that its allegations were true, such plea was not subject to objection as not being a clear and positive allegation of the facts rendering the bill of sale void. The Texas cases to the effect that an affidavit must be, not to the best of affiant's knowledge and belief, but to his actual knowledge of the facts, are distinguished; and the court inclines to the opinion that the question of fraud in the bill of sale here could have been raised without swearing to the pleadings.

**5.—Taxes—Plea to Make Additional Parties—Waiver.**

Where defendant's supplemental answer seeking to make additional parties was heard and exceptions thereto sustained the day before the case was set for trial, and at the calling of the case for trial defendant answered ready, it will be presumed that he abandoned the effort to make additional parties.

**6.—Fraudulent Sale—Seller's Evidence Showing.**

Where a partner had transferred his interest in the property to his copartner in order to defraud his creditors, it was competent for him to testify to the fraudulent character of the sale in an action between his judgment creditor and the administrator of such partner's estate.

**7.—Practice—Submitting Case on Special Issues.**

It is proper for the court to submit a case on special issues when requested so to do by one of the parties, and it is not error to omit an issue unless it is requested by the parties desiring it. Act of 1897; Sayles' Civ. Stats., art. 1331.

**8.—Creditor's Right to Pursue Property Fraudulently Conveyed.**

A judgment creditor has the right to levy on the property of the debtor which is held by another to protect it from execution, and by virtue of a fraudulent transfer, and this although his judgment was obtained subsequently to the execution of such transfer.

Appeal from Bexar. Tried below before Hon. J. L. Camp.

*T. F. Shields* and *P. H. Swearengin,* for appellants.

*Keller & Williams,* for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellee against appellant individually, and as administrator of the estate of Louis A. Frankel, deceased, and the American Surety Company, a surety on his bond. The cause was submitted on special issues to a jury, and upon the answers and the uncontroverted testimony in the case a judgment was rendered in favor of appellee as against appellant in his representative capacity, and in his favor individually, and in favor of the surety company. The judgment against appellant, as administrator, was for $2710, being one-half of what remained of the money realized from the sale of the property after deducting $1580 paid out for debts on the property.

The suit was brought to recover the value of certain property alleged to have been converted to the use of the estate by appellant. Appellee claimed, and showed, title to the property through an execution sale

issued under a judgment in his favor against E. J. Hutcheson. Appellant claimed title, for the estate, through a bill of sale executed by Hutcheson to Louis A. Frankel, which was shown to be a fictitious and fraudulent sale without consideration to secrete the property of Hutcheson from his creditors and especially appellee. Deceased and Hutcheson were partners at the time of the sale, and there was testimony to warrant a finding that it was not intended by the parties that he should part with the title to his property, and that Hutcheson really was a partner after the sale, as he had been before. Frankel was killed by Hutcheson on November 30, 1898, and appellant was on same day appointed temporary administrator of his estate, and in December, 1898, he sold the property to Staacke Bros. for $7000. He sold the entire property, one-half of which belonged to appellee.

It will be noted from the statement heretofore made, that this suit was instituted against appellant individually and in his representative capacity, but he was released from individual responsibility. There has been some diversity of opinion in American courts as to the liability of an administrator or executor, some holding that an administrator who obtains and converts property belonging to another, under the impression that it belongs to the estate, is not liable personally, but only as administrator; others, that he is liable personally, and not as a representative, while others hold that he is liable either as representative or individually. Woerner, Am. Law Adm., 645.

Speaking on this subject the Supreme Court of the United States, after noting that there are decisions that countenance the doctrine that no action will lie against an administrator except upon a claim which existed against the testator or intestate, said: "But upon a full consideration of the nature and of the various decisions on the subject, we are of opinion that whatever property or money is lawfully recovered or received by the executor or administrator, after the death of his testator or intestate, in virtue of his representative character, he holds as assets of the estate, and he is liable therefor, in such representative character, to the party who has a good title thereto. * * * We do not mean to say that the principal may not, in such cases, resort to the administrator in his personal character, and charge him, de bonis propriis, with the amount thus received. We think, he may take either course, at his election; but that whenever an executor or administrator lawfully received money or property, he may be compelled to respond to the party entitled in that character, and shall not be permitted to throw it off after he has received the money, in order to defeat the plaintiff's action."

It appears from the facts in this case that appellant, in his representative character, took possession, in good faith, of the property and sold it for the benefit of the estate, and the suit was properly prosecuted against him as administrator.

The first assignment of error presents error in the action of the trial court in overruling an exception to the petition, in that it failed to al-

lege that the claim sued on had been presented to the administrator for allowance and the same rejected. It appears from the evidence that appellee bought the half interest of Hutcheson in certain personal property belonging to the firm of Hutcheson & Frankel, at an execution sale, and the property was afterwards sold by the administrator. The property before the sale belonged to appellee, and after the sale the fund received from such sale was the property of appellee, if he desired to ratify the sale, as he did by his suit. Red River Bank v. Higgins, 72 Texas, 66.

In the case cited, Livingston made a contract to erect two houses for Joseph Brittan, for which he was to receive installments as the work progressed. Livingston, after receiving two installments, and after having performed enough work to entitle him to the third payment, died. Higgins was appointed administrator of his estate, and completed the dwellings. He fixed a mechanic's lien on them, and a balance of $3687.25 being unpaid, he sued Brittan for the amount, and for foreclosure of the lien. Brittan caused the bank and others to be made parties. The bank claimed that the contract between Livingston and Brittan had been transferred to it by the former in consideration that it should furnish Livingston with money necessary to finish the houses, and the bank under the agreement had furnished $4020, which was unpaid to the extent of $2820.06. It was said by the Supreme Court: "If the appellant was the owner of the fund in the hands of Brittan, through an assignment as alleged, then he could maintain an action against the administrator or any other person who interfered with his right, by reason of the fact that in such case he would not claim through the estate of Livingston, but adversely to it. If it was not the owner, but merely a creditor of the estate of Livingston, then appellant had no standing in court against the administrator, not having authenticated, presented, and had rejected his claim; and this would be so if, being a creditor, it had an equitable lien on the fund."

In this case appellee sued as the owner of a fund arising from the sale by the administrator of his property. He did not claim through, but adversely to, the estate of Frankel. It was his money realized from a sale of his property that he sought to recover, and not a debt due by the estate. He might have sued for the property itself, and in the alternative for its value, but he could not sue for the latter without seeking to recover the former.

The administrator sold the whole of the property as that of the estate, and there is no merit in the contention that a sale by an administrator is a sale simply of the interest the estate has in it, and no matter if the estate gets full value for the property, it can not be held for conversion. It does not matter whether the administrator gave a warranty of title to the purchasers or not, nor whether he could be held as warranting the title; he sold the property of appellee and appropriated the proceeds arising therefrom, and is responsible therefor. The case referred to from the Supreme Court of the United States and the

many authorities cited in Woerner's American Law of Administration, page 645, amply sustain the proposition that an estate is liable for the conversion of property belonging to another by its administrator. The administrator was ordered to sell the entire property or any part thereof; and he reported that he sold the whole of it, and the sale was confirmed, and the whole of it was conveyed by the administrator to the purchasers. In the answer of appellant the whole of the property was claimed for the estate, and it was denied that appellee owned any interest whatever in the property. Not satisfied with these allegations, it was specially alleged that Frankel had bought the interest of Hutcheson in the property and owned it when he died.

In a supplemental petition there was a plea, verified by the affidavit of appellee, that if a bill of sale was made by Hutcheson to Frankel conveying his interest in the horses, carriages, buggies, harness, etc., "plaintiff is informed and believes, and here charges the facts so to be, that said bill of sale was executed after his original suit was filed against said parties, and that there was no consideration passed or paid for said bill of sale, but that the same was executed for the fraudulent purpose of defeating the collection of any judgment that he might obtain in said original suit, and therefore that said bill of sale was void as to this plaintiff." Appellee swore that the allegations were true. The plea is objected to as not being a clear and positive allegation of the facts rendering the bill of sale void; and the cases of Davis v. Campbell, 35 Texas, 780, and Cates v. Moss, 4 Willson's Condensed Cases, section 161, are cited as condemning the plea. The two decisions are based on the ruling in the case of Wilson v. Adams, 15 Texas, 323, where it was held that an affidavit must be made, not to the best of the knowledge and belief of the affiant, but to his actual knowledge of the facts. That opinion is followed in Graham v. McCarty, 69 Texas, 324, and Railway v. Pietzsch, 10 Texas Civil Appeals, 572. In none of those cases, however, was there a positive assertion, as in this, that the facts alleged to have been obtained through information and which were believed by the affiant, did in fact have an existence. This allegation has, in Ewing v. Duncan, 81 Texas, 230, been held sufficient. It is very questionable whether it was necessary to swear to a plea of this character, and we incline to the opinion that the question of fraud could be raised without swearing to the pleadings.

The fifth assignment of error presents that the court erred in sustaining an exception to appellant's plea seeking to make the purchasers of the property from him parties, and to recover from them in case appellee recovered judgment against appellant, and to continue the cause. The supplemental answer, in which it was sought to make additional parties, seems to have been filed two days before the cause was set for trial, and on the following day the exceptions of appellee to the answer were overruled. On the next day the cause was called for trial, and the judgment recites that both parties announced ready for trial. It

will be presumed that appellant abandoned the effort to make additional parties, and entered into trial without them.

It was not error to permit Hutcheson to swear to the facts and circumstances connected with his transfer of his half interest in the property to Frankel. Fraud in the transfer had been alleged, and there is no principle of law that would prevent the vendor from giving the facts in connection with the transfer. The rule invoked by appellant, that the declarations of a vendor made after a sale without the knowledge of the vendee can not be received in evidence to defeat the vendee's title to the property conveyed, is well established. Hinson v. Walker, 65 Texas, 103. Such declarations are hearsay, and for that reason are not permitted. It is intimated, however, in the case of Beville v. Jones, 74 Texas, 148, that in cases where fraud constitutes an element in the case, such declarations are admissible.

We have seen no case in which it has been held that one party to a fraudulent sale can not testify against the other. In none of the cases cited by appellant is any such principle enunciated, and on the other hand it is intimated in one of them that the testimony in court of the pretended vendor might heal the error in admitting his declarations. Boaz v. Schneider, 69 Texas, 128.

Instances are not numerous when the parties to a fraud or either of them will testify to the facts constituting it, but there is no rule contravening the right of either to so testify when the facts indicate that both parties to a contract were parties to the fraud. 1 Greenl. on Ev., sec. 284, and notes.

In the case of Winchester Manufacturing Company v. Creary, 116 United States, 165, the question of the admissibility of the class of evidence under discussion was considered, and it was said: "What they might say not under oath, to others, after possession was surrendered, as to the real nature of the sale, was wholly irrelevant. They were competent to testify under oath, and subject to cross-examination, as to any facts immediately connected with the sale, of which they had knowledge; but their statements out of court, they not being parties to the issues to be tried, were mere hearsay." We conclude that the evidence of Hutcheson as to the facts connected with his sale to Frankel was competent, and not subject to the objections urged against it.

Appellee claimed title to the property converted by appellant by virtue of a judgment against E. J. Hutcheson under which an execution was issued and levied upon the interest Hutcheson had in the livery stable property. It is evident that there is no merit in the objection to proof of the judgment, execution, and sale, on the grounds that it was irrelevant and had no reference to the property in controversy. To say it was inadmissible would be equivalent to holding that a person can not become the owner of property through an execution sale.

The court was requested by appellee to submit the case to the jury on special issues presented by him, which request was granted. This

action is objected to because all the material issues were not submitted. It was proper for the court to submit the case on special issues when requested by one of the parties, and it is not error to omit to submit an issue unless it is requested by the party desiring it. Railway v. Botts, 22 Texas Civ. App., 609.

It was not error to refuse the six special instructions asked by appellant. There was no question under the evidence but that appellee was a creditor of Hutcheson when the bill of sale was executed to Frankel, and if he had not been, but subsequently obtained his judgment, he had the right to levy on Hutcheson's property held by another to protect it from execution. Appellee did not claim a greater interest in the property than that owned by Hutcheson when the sale took place, and it would have been error to have forced such an issue before the jury. Neither was it a question in the case as to notice on the part of appellee as to the bill of sale to Frankel. His knowledge of it would not make it any the less fraudulent, and could not be an impediment in the way of the collection of his debt. There was no issue as to a purchaser in good faith without notice in the case.

It was not denied by appellant that the property sold by him was the same, one-half of which was sold at the execution sale, and in the absence of plea or testimony raising such issue, it will be presumed that the property was the same in December, 1898, when sold by the administrator, as it was when sold by the sheriff in July, 1898. It was alleged in the answer that the property was the same that was sold to Frankel in February, 1897, and that sufficiently identified it as the property claimed by appellee.

The witness Hutcheson is attacked as being highly prejudiced and unworthy of belief, but that is a matter with which this court can not concern itself. It was the duty of the jury to pass upon his credibility and the weight of his testimony. His evidence does not bear such palpable marks of falsity as would justify this court in holding that it should not have been received by the jury.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

We adhere to the view that the case of Red River Bank v. Higgins, 72 Texas, 66, sustains the position that the claim sued on was not one which the statute requires to be presented for allowance or rejection as a condition precedent to a suit.

The case of Rose v. England, 51 Texas, 620, cited by appellant, is not in .point. In that case suit was brought against the administrator for partition of certain land, and for money belonging to the community estate of plaintiff's father and mother which the father had converted to his own use after the death of the mother. After the death of the father the administration had been opened. The court very cor-

rectly held that the claim for money was one that should have been presented to the administrator. In the case before this court, however, the act of conversion took place after the death of Frankel. During his life there was no act upon his part showing an appropriation of the property, and the claim of appellee was not one that arose through the acts of Frankel, but through the acts of the administrator after the death of Frankel.

We endeavored to make plain the position of this court upon the question presented as to the admissibility of the testimony of E. J. Hutcheson, but appellant insists that the opinion, is not only in conflict with the Texas decisions, but is not supported by the case of Winchester Manufacturing Company v. Creary, 116 United States, 165. In that case the distinction between the declarations of vendors out of court and their testimony in court as to the true intent of a sale is too clear to afford any ground for a difference of opinion as to what the court intended to hold. The decision in this case in no wise conflicts with the general rule that the declarations of a vendor impeaching the title of his vendee are not admissible against the latter. All of those cases refer to declarations outside of court, and not to testimony in court. Such declarations are excluded upon the ground alone that they are hearsay, and subject to the rules applicable to hearsay testimony. When the vendor or assignor comes before a court and testifies the objection to it on the ground of its being hearsay has no basis.

The decisions cited by appellant to the effect that all the issues must be submitted when a case is submitted were rendered under a law no longer in existence. In article 1331, Sayles' Civil Statutes, which was enacted in 1897, it is expressly provided that "the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error unless its submission has been requested in writing by the party complaining of the judgment.

There was no evidence to show that Frankel paid Hutcheson anything for the property except the recitation in the bill of sale, and Hutcheson remained in the stable as he had done before the execution of the bill of sale. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.